IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CODY YENTZER,** | : CIVIL ACTION NO. 3:20-CV-1579 |
| **Plaintiff** | : (Judge Conner) |
| v. | : |
| **POTTER COUNTY,** *et al.*, | : |
| **Defendants** | : |

## **MEMORANDUM**

Plaintiff Cody Yentzer commenced the above-captioned action alleging defendants violated his civil rights during his incarceration at Potter County Jail in June 2019. Before the court are Yentzer's complaint, defendants' motion to dismiss plaintiff's complaint, the report of Chief Magistrate Judge Karoline Mehalchick, and several defense objections to that report.

**I.   Factual Background & Procedural History**

Yentzer was incarcerated at Potter County Jail in June 2019. (See Doc. 1 ¶ 10). According to the complaint, during the week of June 23, 2019, defendant corrections officer Josh Rosenwie advised Yentzer that fellow inmate Zackary Snyder "posed a threat to" Yentzer and that Rosenwie would not allow Yentzer and Snyder to be in the visitation room at the same time. (See id. ¶ 11). Yentzer alleges defendants Glenn C. Drake II and Angela Milford, the warden and deputy warden of Potter County Jail, respectively, "were aware of the threat of violence made to [Yentzer] by inmate Snyder and aware of compelling reasons as to why inmate Snyder wanted to harm [Yentzer]." (See id. ¶ 12).

Yentzer alleges he was placed in the visitation room with Snyder on June 30, 2019. (See id. ¶ 13). Yentzer raised concerns "about being placed in the room with Snyder in light of the known threat," but defendant correctional officer Martin nonetheless allowed the two inmates to be in the visitation room together, unsupervised and without a correctional officer present. (See id. ¶¶ 13-14). Snyder directed other inmates to block the camera and door before proceeding to punch Yentzer in the face. (See id. ¶ 15). Martin removed Snyder from the room after the attack. (See id. ¶ 16). Yentzer suffered injuries to his face, nose, and lip—specifically, "a swollen lip and nose bleed"—as a result of the attack. (See id. ¶¶ 17-18). Yentzer visited with his mother after the incident, who alerted defendant correctional officer Fry to Yentzer's injuries and requested an ice pack. (See id. ¶ 18).

After the incident with Snyder, Yentzer returned to the general cell block. (See id. ¶ 19). A different inmate, Skyler Shaffer, known to be a friend of Snyder, "verbally attacked and physically threatened" Yentzer. (Id.) Correctional officer Rosenwie witnessed the incident and ordered Shaffer to return to his cell, but did not lock the cell door. (See id. ¶¶ 19-20). Rosenwie then left the block. (Id. ¶ 21). Shaffer promptly exited his cell, resumed his verbal threats, and "physically assaulted" Yentzer, causing Yentzer to temporarily lose consciousness and suffer "severe injuries" to his head and face. (See id. ¶¶ 21-23). Yentzer alleges correctional officer Fry was in the control room and was responsible for watching cameras on the block at the time of the assault, but that no jail staff—correctional or

2

medical—intervened to stop the attack or provide medical assistance.  (See id. ¶¶ 24-25).

Yentzer regained consciousness and returned to his cell.  (See id. ¶ 26).  He encountered correctional officer Rosenwie, who noted his injuries and asked what happened.  (See id. ¶ 27).  Yentzer alleges he was "removed to another area of the prison but was not seen by any medical personnel," he was not provided pain medication, no ambulance was called, and he was instead required to wait for a replacement officer to arrive before correctional officer Martin transported him to the hospital.  (See id. ¶¶ 28-31).

Yentzer commenced this action in September 2020, naming Drake, Milford, Rosenwie, Martin, Fry, and Potter County as defendants.  The complaint asserts two claims pursuant to 42 U.S.C. § 1983: failure to protect from attack (Count I) and denial of adequate medical care (Count II).  Defendants moved to dismiss both counts, and Judge Mehalchick issued a report recommending that we grant in part and deny in part defendants' motion.  Defendants have lodged objections to the report, to which Yentzer did not respond.  See M.D. PA. L.R. 72.3.

## II.   Legal Standards

### A.   Review of a Magistrate Judge's Report and Recommendation

When a party objects to a magistrate judge's report and recommendation, the district court undertakes *de novo* review of the contested portions of the report. See E.E.O.C. v. City of Long Branch, 866 F.3d 93, 99 (3d Cir. 2017) (quoting 28 U.S.C. § 636(b)(1)); see also FED. R. CIV. P. 72(b)(3).  We afford "reasoned consideration" to

3

any uncontested portions of the report before adopting them as the decision of the court. City of Long Branch, 866 F.3d at 100 (quoting Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987)).

### B.     Rule 12(b)(6) Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court conducts a three-step inquiry. See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578

F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556. A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

## III. Discussion

Defendants' motion raises a constellation of challenges to Yentzer's complaint. Defendants argue that Yentzer fails to state a claim against any defendant, that the individual defendants are entitled to qualified immunity, and that Potter County is immune from Yentzer's request for punitive damages. Judge Mehalchick recommends we grant defendants' motion to the extent Yentzer seeks punitive damages against Potter County or the individual defendants sued in their official capacities. Judge Mehalchick further recommends we grant the motion as to Yentzer's failure-to-protect claim against Martin and Fry regarding the Shaffer incident, with leave to amend. Judge Mehalchick opines the complaint otherwise adequately pleads the remaining claims—*viz.*, a failure-to-protect claim regarding the Snyder incident against all individual defendants; a failure-to-protect claim regarding the Shaffer incident against all individual defendants except Martin and Fry; a claim for denial of adequate medical care against all individual defendants; and a municipal liability claim against Potter County regarding all three alleged

5

violations. We will address defendants' unopposed objections to the report's recommendations *seriatim*.[1]

### A. Denial of Medical Care as to Drake and Milford

Defendants Drake and Milford move to dismiss Yentzer's claim against them for denial of medical care on the ground that the complaint fails to allege that either defendant knew of or was deliberately indifferent toward Yentzer's serious medical needs. (See Doc. 21 at 11). Yentzer concedes in his opposition brief that there are no facts in his complaint with respect to what Drake and Milford knew and did or failed to do—stating "we do not know if . . . Drake and Milford were consulted by other Defendants as a result of the incidents or if they were directly responsible for making decisions about [Yentzer's] medical care" and suggesting these are "facts to be explored during discovery." (See Doc. 25 at 14). Yentzer then argues Drake and Milford are "named as policymakers for the prison" and thus are "responsible for the implementation of policy and procedure with respect to the handling of medical care, particularly in emergency medical situations." (See id.) Judge Mehalchick

---

[1] Plaintiff has not objected to the report's recommendation that we dismiss the failure-to-protect claim against Martin and Fry regarding the Shaffer incident, and we perceive no clear error in this recommendation. Defendants, for their part, have not challenged the report's recommendation that Yentzer's failure-to-protect claim against Rosenwie, Martin, and Fry regarding the Snyder incident be allowed to proceed. Although the factual allegations in support of this claim against Fry in particular are spare (the complaint alleges only that he was in the control room at the time it occurred), we will adopt this unchallenged aspect of the report. Finally, defendants do not object to the report's determination that the complaint pleads sufficient facts to state a failure-to-protect claim regarding the Shaffer incident as well as a medical deliberate indifference claim against Rosenwie. We agree with Judge Mehalchick's conclusion in this respect and will adopt this uncontested aspect of the report as well.

relies on these latter assertions to conclude that Yentzer states a claim against Drake and Milford, as jail policymakers, for denial of adequate medical care. (See Doc. 27 at 10).

We agree with defendants that this reliance was in error. It is axiomatic that pleadings cannot be amended through briefing in opposition to a motion to dismiss. Frederico v. Home Depot, 507 F.3d 188, 201-02 (3d Cir. 2007) (citing Commonwealth of Pa. *ex rel.* Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988)). The only facts from which the court could potentially impute knowledge to Drake and Milford appear in Yentzer's opposition brief. Accordingly, we will reject this aspect of Judge Mehalchick's report and grant defendants' motion to dismiss the medical deliberate indifference claim against Drake and Milford. Because the deficiencies in this claim are purely factual, we will grant Yentzer leave to amend.

**B.     Failure to Protect as to Drake and Milford**

Defendants Drake and Milford also move to dismiss the failure-to-protect claim against them. (See Doc. 21 at 6-7). To plead a failure-to-protect claim, plaintiff must allege he was incarcerated under conditions posing a substantial risk of serious harm, that defendant knew of and chose to disregard—*i.e.*, was deliberately indifferent to—that risk, and that defendant's indifference caused plaintiff harm. See Bistrian v. Levi, 696 F.3d 352, 367 (3d Cir. 2012) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)), abrogated on other grounds by Mack v. Yost, 968 F.3d 311, 319 n.7 (3d Cir. 2020), as recognized in Williams v. Del. Cnty. Bd. of Prison Inspectors, 844 F. App'x 469, 472-73 (3d Cir. 2021) (nonprecedential). To

establish an individual defendant's liability, a plaintiff must plead the defendant's "personal involvement in the alleged wrongs" by "describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." See Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210, 222 (3d Cir. 2015) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)). Thus, supervisory defendants like Drake or Milford cannot be held liable for conduct of subordinates on a theory of *respondeat superior*. See Parkell v. Danberg, 833 F.3d 313, 330 (3d Cir. 2016) (citing Chavarriaga, 806 F.3d at 227). Supervisory liability attaches in only one of two ways: *first*, when a supervisor "established and maintained a policy, practice[,] or custom which directly caused the constitutional harm," and, *second*, when the supervisor either "participated in, directed, or had knowledge of and acquiesced in their subordinates' violations." Id. (quoting Santiago, 629 F.3d at 129 n.5).

In their motion to dismiss, Drake and Milford argue the complaint fails to establish that they knew of or deliberately disregarded a threat to Yentzer's safety. (See Doc. 21 at 6-7). Judge Mehalchick concludes the complaint adequately pleads Drake's and Milford's knowledge of the threat posed by Snyder, and to this extent, we agree with the report. (See Doc. 27 at 9). Yentzer alleges Drake and Milford "were aware of the threat of violence made to [Yentzer] by inmate Snyder and aware of compelling reasons as to why inmate Snyder wanted to harm [Yentzer]." (Doc. 1 ¶ 12). But we agree with defendants that the remainder of the report's recommendation, which would allow both failure-to-protect theories to proceed, suffers from two defects. First, the report's statement that Drake and Milford were

8

"exposed to information concerning the risk" posed by *Shaffer* and therefore "must have known about it" finds no factual support in the complaint. (See Doc. 27 at 9; cf. Doc. 1 ¶ 12 (alleging knowledge only as to "inmate Snyder")). Second, the report fails to address defendants' further argument: that the complaint does not allege any action or inaction by Drake and Milford which might constitute deliberate indifference to either the Snyder or Shaffer threats. (See Doc. 21 at 7). Our review of the complaint reveals that both defense assertions are correct. The complaint simply does not allege any facts attributing actual knowledge of the Shaffer threat to Drake or Milford. And even if it did, Yentzer alleges no facts establishing these defendants were deliberately indifferent to the alleged threats—either by participating in, acquiescing in, directing, or otherwise bearing responsibility for the Snyder and Shaffer incidents. We decline to adopt the report on this ground and will grant defendants' motion to dismiss the failure-to-protect claims against Drake and Milford. Because this factual deficiency too is capable of being cured, we will dismiss the claim with leave to amend.

### C. Denial of Medical Care as to Martin and Fry

Defendants next challenge the report's recommendation that Yentzer's denial-of-medical-care claim be permitted to proceed against correctional officers Fry and Martin. (See Doc. 21 at 11-13). To sufficiently plead this claim, a plaintiff must allege both "a serious medical need" and "acts or omissions by prison officials that indicate deliberate indifference to that need." See Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003) (citing Rouse v. Plantier, 182 F.3d 192,

9

197 (3d Cir. 1999)).  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).  Deliberate indifference on the part of prison officials may be shown by allegations of intentional refusal to provide care known to be medically necessary, delayed provision of medical treatment for nonmedical reasons, denial of prescribed medical treatment, or denial of reasonable requests for treatment resulting in unnecessary suffering or risk of injury.  See Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993) (quoting Lanzaro, 834 F.2d at 346).

In their motion to dismiss, defendants contend the complaint, *inter alia*, fails to allege correctional officers Fry and Martin were aware that Yentzer needed medical treatment.  (See Doc. 21 at 13).  Judge Mehalchick's report concludes that Fry was twice placed on notice of Yentzer's need for medical treatment: first when Yentzer's mother alerted him to Yentzer's injuries after the Snyder incident, and second when he ostensibly observed the Shaffer incident from the control room.  (See Doc. 27 at 15).  We agree with Judge Mehalchick on this point; although the complaint's allegations are spare, they sufficiently allege Fry was made aware of Yentzer's injuries after each incident.  We will thus overrule defendants' objections to the extent they argue the complaint fails to allege Fry was aware of Yentzer's need for medical treatment.

We agree with defendants, however, that the complaint fails to state a claim against Martin for medical deliberate indifference. Judge Mehalchick recommends the court permit this claim to proceed, based solely on Yentzer's allegation that Martin is the officer who ultimately transported him to the hospital. (See Doc. 27 at 15). Yentzer does not allege Martin observed Yentzer's injuries before transporting him to the hospital or otherwise was alerted to his need for medical treatment. Nor does Yentzer allege Martin acted (or failed to act) in a manner that was deliberately indifferent toward Yentzer's medical needs. Accordingly, we decline to adopt the report to this extent and will dismiss the medical deliberate indifference claim against Martin with leave to amend.

### D. Qualified Immunity

Defendants also argue that qualified immunity shields Drake, Milford, Rosenwie, Martin, and Fry from Yentzer's claims. (See Doc. 21 at 20-22). Qualified immunity protects a state actor who has committed a constitutional violation if the plaintiff's rights were not "clearly established" when the individual acted. Pearson v. Callahan, 555 U.S. 223, 244-45 (2009). No liability will attach if a reasonable actor could have believed the challenged conduct was consonant with settled law. Id.; see Springer v. Henry, 435 F.3d 268, 280 (3d Cir. 2006). The burden to establish qualified immunity rests with the defendant claiming its protection. Beers-Capitol v. Whetzel, 256 F.3d at 142 n.15 (citing Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 726 (3d Cir. 1989)).

11

A court evaluating a claim of qualified immunity considers a two-pronged inquiry: whether, based on the alleged facts, a constitutional right has been violated and, if so, whether the right was "clearly established" at the time of the alleged violation. See Spady v. Bethlehem Area Sch. Dist., 800 F.3d 633, 637 (3d Cir. 2015) (quoting Pearson, 555 U.S. at 232). We have already determined that Yentzer has adequately alleged a constitutional violation by certain defendants in the form of a failure-to-protect claim and a medical-deliberate indifference claim. Defendants' qualified-immunity argument rises and falls on their assertion that the rights at issue were not clearly established.

Judge Mehalchick's report addresses the first prong of the qualified immunity analysis, but does not discuss the prong challenged by defendants—whether the rights at issue were clearly established. (See Doc. 27 at 20). For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 739 (2002). Although earlier cases involving "fundamentally similar" facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding. Id. at 741. The Supreme Court of the United States has cautioned that courts must not cast the right at issue too narrowly; indeed, the Court has said "'[w]e do not require a case directly on point' before concluding that the law is clearly established." See Stanton v. Sims, 571 U.S. 3, 6 (2013) (*per curiam*) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)). At the same time, we must take care not to define the right at

12

issue "at a high level of generality." See White v. Pauly, 580 U.S. ___, 137 S. Ct. 548, 552 (2017) (*per curiam*) (quoting al-Kidd, 563 U.S. at 742). The Supreme Court has explained that to strike the appropriate balance, "clearly established law must be 'particularized' to the facts of the case." See id. (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

As an initial matter, we reject defendants' argument as conclusory and undeveloped. Defendants superficially aver they are "unaware of" precedent clearly establishing the rights at issue, thereby passing off the necessary research and analytical work. (See Doc. 21 at 21). It is defendants' burden, not Yentzer's or the court's, to establish that qualified immunity applies. See Beers-Capitol, 256 F.3d at 142 n.15 (citing Stoneking, 882 F.2d at 726). More problematically, however, is that defendants define the rights at issue far too narrowly: they argue we must look for cases mirroring the precise facts before us, "involving injuries inflicted by two different inmates and with no correctional officers present for the incidents" and holding specifically that "transporting an inmate who had injuries from a fist fight to the hospital in a county vehicle rather than by ambulance would violate the inmate's constitutional rights."[2] (See Doc. 21 at 21). As we have already observed, a plaintiff need not identify a case "directly on point" to surmount a qualified-

---

[2] This latter suggestion not only defines the right at issue too narrowly, it misreads Yentzer's complaint: Yentzer's concern is not merely with defendants' choice to transport him in a county vehicle as opposed to an ambulance; it is that defendants chose to delay his medical care by waiting until a county vehicle and driver became available as opposed to calling an ambulance for immediate transport. (See Doc. 1 ¶ 31).

13

immunity defense.  See Stanton, 571 U.S. at 6 (quoting al-Kidd, 563 U.S. at 741); see also Williams, 848 F.3d at 570 (noting "existing precedent need not perfectly match the circumstances of the dispute in which the question arises").  We find that defendants have failed to meaningfully develop their qualified-immunity argument, and we further find that development of a factual record with respect to defendants' alleged conduct will better illuminate whether the defense applies.  See Newland v. Reehorst, 328 F. App'x 788, 791 n.3 (3d Cir. 2009) (nonprecedential).  We will thus deny defendants' motion without prejudice to their right to reraise the issue of qualified immunity at a later stage.

### E.     Official-Capacity Claims Against Individual Defendants

Defendants move the court to have the official-capacity claims against the individual defendants dismissed as duplicative of the claims against Potter County.  (See Doc. 21 at 19).  Yentzer concedes this point in his opposition brief, agreeing the claims are duplicative.  (See Doc. 25 at 19).  Judge Mehalchick's report does not address this issue and instead concludes Yentzer's claims against the individual defendants in their official capacities are viable to the same extent as his claims

against Potter County.³ (See Doc. 27 at 18). Because defendants' motion was unopposed as to this argument, and because we agree official-capacity claims against individual municipal defendants are duplicative of claims against the municipality itself, we will decline to adopt the report to this extent and grant defendants' motion to dismiss the official-capacity claims.

**F.   Municipal Liability**

Defendants moved to dismiss all municipal liability claims against Potter County on two grounds: specifically, that Yentzer does not allege Potter County policymakers were on notice of a risk of deprivation of Yentzer's rights, and that Yentzer failed to allege sufficient facts to establish Potter County's failure to train. (See Doc. 21 at 15-18). Judge Mehalchick's report construes Yentzer's complaint as proceeding on a "single-incident" theory of liability and opines the complaint adequately describes the purportedly deficient policies and procedures. (See Doc. 27 at 17). The report thus concludes Yentzer has adequately alleged his municipal liability claims. (See id.)

---

³ It appears the report misinterprets defendants' argument with respect to the official-capacity claims. The report frames the issue as implicating "qualified immunity . . . per the Eleventh Amendment" and cites to decisional law addressing Eleventh Amendment sovereign immunity, but ultimately seems to conclude that immunity does not apply because Yentzer has adequately pled a claim against Potter County, and so likewise has adequately pled his official-capacity claims against the individual defendants. (See Doc. 27 at 18). For purposes of clarifying the record, we hold such immunity does not apply for a separate reason: Eleventh Amendment immunity, which differs from qualified immunity, applies only to state actors, not to municipal actors like defendants *sub judice*. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 70 (1989) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.54 (1978)); Febres v. Camden Bd. of Educ., 445 F.3d 227, 229 (3d Cir. 2006) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977)).

Defendants object on the ground that the magistrate judge's report fails to fully analyze the requirements for single-incident liability. (See Doc. 30 at 15). We are constrained to agree. As a threshold matter, Yentzer provides only conclusory and generic assertions regarding Potter County's alleged policies. He alleges Potter County maintained a custom, practice, or procedure of understaffing the jail, failing to train jail staff, and failing to call an ambulance (or to permit its staff to do so) in the event of a medical emergency. (See Doc. 1 ¶¶ 44, 45, 51-54). But even if these allegations are enough to establish a deficient municipal policy—and we harbor doubt, given their conclusory nature—the complaint is silent as to the knowledge aspect of municipal liability. The complaint does not allege a pattern of prior constitutional violations that would put Potter County on notice its policies were deficient, nor does it allege facts from which we might find the need for different policies was "so obvious" that defendants' failure to act could be characterized as deliberate indifference. See Thomas v. Cumberland County, 749 F.3d 217, 223-25 (3d Cir. 2014) (describing contours of single-incident liability). Nonetheless, this deficiency is a factual one, and in his opposition brief to defendants' motion to dismiss, Yentzer articulates reasons why he believes the need for training should have been obvious to county decisionmakers. Accordingly, while we decline to adopt the report and will grant the motion to dismiss Yentzer's municipal liability claims, we will do so without prejudice and with leave to amend.

### G.  Punitive Damages

Lastly, defendants move to dismiss Yentzer's request for punitive damages against Potter County, positing that punitive damages are unavailable as a matter of law against a municipality.  (See Doc. 21 at 19-20).  Yentzer concedes this point in his opposition brief, agreeing he cannot pursue punitive damages against Potter County.  (See Doc. 25 at 19-20).  Judge Mehalchick's report recommends the claims for punitive damages be dismissed, but the analysis appears to be grounded in an incorrect legal premise—that it is "qualified immunity afforded per the Eleventh Amendment" which bars the punitive damages request.  (See Doc. 27 at 18).  It is not the Eleventh Amendment (which applies to states and not municipalities) but rather Supreme Court precedent which holds punitive damages are unavailable against municipalities like Potter County pursuant to common law principles.  See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981).  We will thus adopt the report's recommendation that the claim for punitive damages against Potter County be dismissed, but on separate grounds.

### IV.  Conclusion

For all of the above reasons, we will adopt in part and decline to adopt in part Judge Mehalchick's report.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:   March 28, 2022